1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JUAN J. GODINEZ,                 CASE NO. SACV 17-0194 SS

12                  Plaintiff,

13        v.
                                      **MEMORANDUM DECISION AND ORDER**
14   NANCY A. BERRYHILL,[1] Acting
     Commissioner of Social
15   Security,

16                  Defendant.

17

18                              **I.**

19                         **INTRODUCTION**

20

21        Juan  J.  Godinez  ("Plaintiff")  seeks  review  of  the  final

22   decision  of  the  Acting  Commissioner  of  Social  Security  (the

23   "Commissioner"  or  "Agency")  denying  his  application  for  social

24   security  benefits.   The  parties  consented,  pursuant  to  28  U.S.C.

25   §  636(c),  to  the  jurisdiction  of  the  undersigned  United  States

26   _____

     [1] Nancy  A.  Berryhill,  Acting  Commissioner  of  Social  Security,  is
27   substituted  for  the  Commissioner  of  Social  Security  Administration,  whom
     Plaintiff  named  in  the  Complaint.   See 42  U.S.C.  §  405(g);  Fed.  R.  Civ.
28   P.  25(d).

Magistrate Judge.  (Dkt. Nos. 13, 17, 18).  For the reasons stated below, the decision of the Commissioner is REVERSED and this case is REMANDED for further administrative proceedings consistent with this decision.

## II.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

  (2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

  (3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

  (4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled.  If not, proceed to step five.

  (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

  The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work

3

experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

### III.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process in evaluating Plaintiff's case. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 15, 2013, the application date. (AR 23). At step two, the ALJ found that Plaintiff's cervical stenosis post decompression and fusion, lumbar degenerative disc disease with foraminal stenosis, thoracic degenerative disc disease with stenosis, distal polyneuropathy and low intellectual functioning are severe impairments. (AR 23). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 24-26).

The ALJ then assessed Plaintiff's RFC and concluded that he can perform sedentary work, as defined in 20 C.F.R. § 416.967(a),[2] except:

> [Plaintiff can] stand and walk with normal breaks for up to two hours in an eight-hour day; sit for normal breaks for a total of six hours in an eight-hour day with the ability to change positions every 45 minutes and stand and stretch every three to four minutes at the work station; frequently use the bilateral upper extremities for pushing and pulling, reaching in all directions, grasping, handling and fingering; pushing and pulling occasionally in the lower extremities bilaterally; occasionally climbing ladders, ropes, scaffolds or crawling; limited to moderately complex tasks with a reasoning level of three or below.

(AR 26). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 30). Based on Plaintiff's RFC, age, education, work experience and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including assembler and table worker. (AR 30-31).

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act since October 15, 2013, the date the application was filed. (AR 31).

## IV.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-

21 (citing <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

**A.   The ALJ's Reasons for Discrediting Plaintiff's Subjective Symptom Testimony Were Not Supported By Substantial Evidence**

Plaintiff testified that he is unable to work due to neck and back pain, weakness in his legs and tingling in his hands. (AR 51-52, 55, 58). To relieve the pain, Plaintiff needs to lay down for two hours during the day. (AR 53). He needs a walker to ambulate in the morning before his back gets stretched out. (AR 55). Plaintiff can walk or sit for about thirty minutes before needing to change positions. (AR 57). He also has difficulty fingering and reaching because of tingling and weakness in his arms and hands. (AR 58-59).

Plaintiff asserted that due to his pain, he has difficulty putting on his shoes and socks, preparing meals and picking up trash off the floor. (AR 190-91). He can prepare his own meals only once a day because he has trouble standing for very long. (AR 191). Once a week he is able to perform some household chores but only for thirty minutes at a time. (AR 191). He is able to shop for groceries for twenty to thirty minutes. (AR 192). His impairments limit his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb, concentrate and follow instructions. (AR

194).  He can walk for only a couple blocks before needing to rest for five minutes.  (AR 194).  He uses a walker on occasion when the pain gets worse.  (AR 195).

The ALJ found that Plaintiff was "not entirely credible":

> The medical evidence of record does not entirely support the credibility of [Plaintiff's] allegations regarding his impairments.  The objective medical findings reveal some limitations, but not to the extent alleged by [Plaintiff].  The record shows [Plaintiff] has a history of back and neck pain, which was treated with a successful cervical fusion in 2014.  Post-surgery [Plaintiff] was noted to have improvement in his condition.  He was noted as being independent in his ability to ambulate, carry, move and handle objects.  The undersigned notes the record shows [Plaintiff] does experience pain; however, he testified that he is able to walk for up to half an hour at a time and drive a car.

(AR 28-29; see id. 26-27) (citation omitted).

## 1.  Standards

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  Trevizo v. Berryhill, 874 F.3d 664, 678 (9th Cir. 2017).  First, the ALJ must determine if there is medical evidence of an

impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 874 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487,

493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted).  Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it."  <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

**2.    Objective   Evidence   Supports   Plaintiff's   Subjective Symptoms**

The ALJ contends that "the objective findings in this case fail to provide strong support for [Plaintiff's] allegations of disabling symptoms and limitations."  (AR 27).  The Court disagrees.

Initially, it is problematic that the ALJ failed to indicate which of Plaintiff's allegations are not supported by objective findings.  <u>See</u> <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); <u>accord</u> <u>Brown-Hunter</u>, 806 F.3d at 493. Furthermore, there is significant evidence in the medical record that supports Plaintiff's alleged limitations.  On November 8, 2013, Carlos T. Garcia, D.C., reported that Plaintiff has had recurring severe neck and back pain and stiffness for over two

years.  (AR 363).  Plaintiff periodically requires the use of a
walker for support.  (AR 363).  On November 14, 2013, the Agency's
Field Office noted that Plaintiff needed a walker to ambulate.  (AR
168); see 20 C.F.R. § 416.929(c)(3) (ALJ must "consider all of the
evidence presented, including . . . observations by [Agency]
employees").

On May 21, 2014, Plaintiff reported nearly constant and
worsening lower back pain, with pain and numbness radiating to his
legs.  (AR 374).  On examination, John S. Godes, M.D.,[3] found
tenderness of the lower lumbar spine and paravertebral areas,
bilaterally, with "marked limitation of motion."  (AR 377, 379).
Forward flexion was limited to 20/90 degrees, extension to 5/25
degrees and lateral flexion to 5/25 degrees.  (AR 377).  Due to
Plaintiff's low back pain, Dr. Godes could not perform a straight-
leg-raising test.  (AR 377).  Plaintiff ambulated with a "marked
limp."  (AR 378).  On August 28, 2014, Plaintiff reported sharp
lower back pain, radiating to his lower extremities with tingling
and numbness.  (AR 413).  He had weakness in his lower extremities
and ambulated with an unstable gait.  (AR 413-14).  Plaintiff's
unstable gait was also observed on September 18 and October 3,
2014, along with difficulty with fine motor motion and activity in
both hands.  (AR 406, 410).

The  ALJ stated that Plaintiff's condition improved following
his October 2014 surgery.  (AR 28, 29).  However, the evidence does

_____

[3] The ALJ gave Dr. Garcia's opinion "great weight."  (AR 28).

not support this statement. On November 21, 2014, Plaintiff reported difficulty ambulating and diffuse numbness in his legs. (AR 500). He uses a walker because of significant stability issues. (AR 500). He exhibited a broad-based gait with short steps. (AR 501). On December 17, 2014, Plaintiff had reduced range of motion and impaired strength. (AR 483-84). On June 3, 2015, Plaintiff complained of low back pain and poor balance. (AR 507). He reported using a walker due to difficulty walking, particularly in the mornings. (AR 507). Plaintiff complained of numbness and tingling in his lower extremities, bilaterally. (AR 507). On examination, Peyman Tabrizi, M.D., found that Plaintiff ambulates "quite poorly." (AR 507). His feet are everted, and he is unable to walk on his heels or toes. (AR 507). Dr. Tabrizi also found motor loss, sensory loss and deep tendon reflex loss. (AR 507-08).

These medical records are consistent with Plaintiff's allegations of disabling pain, numbness and tingling in his back and lower extremities. See Social Security Ruling ("SSR") 16-3p,[4] at *5 (S.S.A. Oct. 25, 2017) ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult"); see also Diedrich v. Berryhill, 874 F.3d 634, 642

---

[4] Social Security Rulings (SSRs) "do not carry the 'force of law,' but they are binding on ALJs nonetheless." Bray, 554 F.3d at 1224. They "reflect the official interpretation of the [Agency] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." Id. (citation omitted).

(9th Cir. 2017) (finding it "improper for the ALJ to discount Diedrich's testimony by cherry picking the absence of certain symptoms") (citation and alteration omitted); Garrison, 759 F.3d at 1017 & n.23 (ALJ may not cherry-pick from mixed results).

### 3. Plaintiff's Daily Activities Do Not Detract From His Credibility

The ALJ also asserts that Plaintiff's statements regarding his subjective symptoms and his daily activities are inconsistent. (AR 29). However, the ALJ fails to explain how being able to walk for only a half hour or drive a car is inconsistent with Plaintiff's allegations of disabling pain. See Brown-Hunter, 806 F.3d at 493 (ALJ must "identify specifically which of [claimant's] statements she found not credible and why"); Holohan, 246 F.3d at 1208 (same). In any event, Plaintiff's testimony that he can walk for half an hour is consistent with his statements that he can walk or sit for thirty minutes before needing to change positions, perform some household chores but only for thirty minutes, and shop for only twenty to thirty minutes. (AR 57, 191-92). While Plaintiff stated that he is able to drive a car, the ALJ did not inquire as to how long he could drive without disabling pain. (AR 53).

Nor does the ALJ explain how Plaintiff's daily activities are transferable to a work setting. "[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to

14

discredit an allegation of disabling excess pain." _Fair_, 885 F.2d at 603 (emphasis in original). However, the ALJ "must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." _Orn v. Astrue_, 495 F.3d 625, 639 (9th Cir. 2007) (citation and alteration omitted). Here, the ALJ neither made specific findings nor pointed to any record evidence to support his conclusion that Plaintiff's daily activities were "transferable" to a work setting. _See_ _Orn_, 495 F.3d at 639.

Defendant points to Plaintiff's reported daily activities, including gardening, washing dishes, doing laundry, cleaning, vacuuming, emptying the trash, using a weeder, sweeping, mopping and running errands as evidence that Plaintiff is able to function in a work setting. (Dkt. No. 20 at 5-6). While the ALJ cited these daily activities in his decision, they were not included in his credibility analysis. (_Compare_ AR 25, 27, _with_ _id._ 29). The Court is "constrained to review the reasons the ALJ asserts." _Burrell_, 775 F.3d at 1138 (citation omitted). Further, the ALJ misstated Plaintiff's reported activities. While Plaintiff is able occasionally to do some household chores, his impairments limit him to thirty minutes before needing to rest. (AR 191). The ALJ does not explain how such occasional chores are transferable to an eight-hour workday. "One does not need to be 'utterly incapacitated' in order to be disabled." _Vertigan v. Halter_, 260 F.3d 1044, 1050 (9th Cir. 2001).

The ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptoms. The matter is remanded for further proceedings. On remand, the ALJ shall reevaluate Plaintiff's symptoms in accordance with SSR 16-3p, taking into account the full range of medical evidence.

## B. The ALJ Failed To Properly Weigh The Treating Physicians' Opinions

An ALJ must afford the greatest weight to the opinion of the claimant's treating physician. The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Thomas v. Barnhart, 278 F.3d 947, 956–57 (9th Cir. 2002); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. Id. at 830-31; see Orn, 495 F.3d at 632; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008). "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record," the ALJ shall

consider "specified factors in determining the weight it will be given[, including] . . . the length of the treatment relationship and the frequency of examination by the treating physician[ ] and the nature and extent of the treatment relationship between the patient and the treating physician." Orn, 495 F.3d at 631 (citation omitted); see 20 C.F.R. §§ 404.1527(d)(2) (listing factors to consider), 416.927(d)(2) (same).

### 1. Dr. Meka

Dr. Meka opined that Plaintiff can sit, stand or walk up to two hours in an eight-hour day and has "limited" use of his hands. (AR 476). In a single-sentence analysis, the ALJ gave this opinion "little weight," finding that "it is more restrictive than the testimony of [Plaintiff] regarding his activities of daily living." (AR 29). The ALJ's analysis is not supported by substantial evidence.

First, the ALJ's analysis fails to provide sufficient analysis. A single-sentence conclusion does not provide sufficiently specific reasoning to allow a reviewing court to conclude that an ALJ rejected a treating physician's opinion for legitimate reasons supported by substantial evidence. The ALJ does not explain how Plaintiff's testimony contradicts Dr. Meka's opinion.

Second, the ALJ misstated Dr. Meka's opinion. The ALJ contends that Dr. Meka found that Plaintiff can "never use [his]

upper extremities." (AR 29). While Dr. Meka checked a column labeled "N", which the form does not define, he clearly wrote "limited" in his assessment of Plaintiff's ability to grasp, manipulate and reach with his hands. (AR 476). If the ALJ had a question about Dr. Meka's opinion, the ALJ had a duty to develop the record. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered . . . when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Plaintiff testified that he can walk or sit for only thirty minutes before needing to rest. (AR 57). Plaintiff also testified that he has difficulty fingering and reaching because of tingling and weakness in his arms and hands. (AR 58-59). He stated that he could reach at or below shoulder level only ten minutes before needing to rest for fifteen minutes. (AR 58-59). Dr. Meka's opinion is consistent with this testimony.

In sum, the ALJ did not provide specific and legitimate reasons for rejecting Dr. Meka's opinion. On remand, the ALJ shall reevaluate the weight to be afforded Dr. Meka's opinion. If the ALJ finds appropriate reasons for not giving the opinion controlling weight, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.

### 2.    Dr. Multani

Dr. Multani opined that Plaintiff can occasionally lift and carry up to fifty pounds and frequently lift and carry up to twenty pounds. (AR 478). Plaintiff is limited in his ability to use his upper extremities. (AR 478-79). He can sit up to one hour and stand or walk up to thirty minutes in an eight-hour day. (AR 479). Plaintiff can never climb, can only occasionally balance, stoop, crouch, kneel or crawl, and would likely miss more than three days of work each month. (AR 480-81).

In a single-sentence conclusion, the ALJ gave this opinion "little weight," finding that "it is more restrictive than the testimony of [Plaintiff] and unsupported by the medical evidence of record that showed a successful cervical fusion. (AR 29). The ALJ's analysis is not supported by substantial evidence. Again, a single-sentence conclusion does not provide sufficiently specific reasoning to allow a reviewing court to conclude that an ALJ rejected a treating physician's opinion for legitimate reasons supported by substantial evidence. The ALJ does not explain how Plaintiff's testimony or the cervical fusion surgery contradicts Dr. Multani's opinion.

Second, while there are some discrepancies between Dr. Multani's opinion and Plaintiff's testimony, in other regards they are quite similar. Both Dr. Multani and Plaintiff agree that he is limited in his ability to use his upper extremities and to climb, balance, stoop, crouch, kneel and crawl. (Compare AR 58-

59, 194 <u>with</u> <u>id.</u> 478-80).  While they appear to disagree on the number of hours in an eight-hour workday that Plaintiff can sit, stand or walk, they agree generally that Plaintiff can stand or walk an hour or less before needing to rest.  (<u>Compare</u> AR 53, 57, 191-92, <u>with</u> <u>id.</u> 479).

Finally, the medical evidence does not support the ALJ's conclusion that Plaintiff's cervical fusion surgery "successfully" alleviated his functional impairments.  Following his October 2014 surgery, Plaintiff still had difficulty ambulating, needing a walker on occasion.  (AR 500, 507).  The numbness and tingling in his lower extremities continued.  (AR 500, 507).  In December 2014, he had reduced range of motion and impaired strength.  (AR 483-84).  In June 2015, Plaintiff was ambulating "quite poorly," with everted feet and motor, sensory and deep tendon reflex loss.  (AR 507-08).

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Multani's opinion.  On remand, the ALJ shall reevaluate the weight to be afforded Dr. Multani's opinion. If the ALJ finds appropriate reasons for not giving the opinion controlling weight, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.[5]

---

[5] Plaintiff also argues that the ALJ erred by failing to properly consider listings 1.04A and 1.04C.  (Dkt. No. 19 at 6-11).  Plaintiff similarly contends that the ALJ erred in crediting the Medical Expert's opinion on these listings.  (Id. at 15-16).  However, it is unnecessary to reach

**VI.**

**CONCLUSION**

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 11, 2017

                                    /S/
                              _____
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**

---

Plaintiff's arguments on these grounds, as the matter is remanded for the alternative reasons discussed at length in this Order.